IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

YIMOE SIDDHA,

    Plaintiff,

    v.

RICHARD DOVEY, WARDEN,
CORIZON HEALTH,
SGT. SIMMONS, and
CHAPLAIN HALL,

    Defendants.

Civil Action No. GLR-20-185

**MEMORANDUM OPINION**

THIS MATTER is before the Court on a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by Defendant Corizon Health, Inc. ("Corizon") (ECF No. 14),[1] and a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment by Defendants Warden Richard Dovey, Chaplain Shawn Hall, and Sgt. Brian Simmons (the "Correctional Defendants") (ECF No. 15).[2] Corizon has also filed a Motion to Strike (ECF No. 27). Also pending are Plaintiff Yimoe Siddha's Motion for Preliminary Injunction (ECF No. 6); Motion to Respond to Motion to Dismiss (ECF No. 20);[3] Motion for Appointment of Counsel (ECF No. 24); and Motion to Enforce Preliminary Injunction

---

[1] Corizon filed two identical Motions to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF Nos. 13, 14). The Clerk shall be directed to terminate the first motion filed.

[2] For reasons set forth below, the Court will construe the Motions as motions for summary judgment.

[3] Siddha's Motion to Respond also appears to have been docketed twice. (ECF Nos. 19, 20). The Clerk shall be directed to terminate the first motion filed.

(ECF No. 29).[4] The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant Defendants' Motions to Dismiss or, in the Alternative, Motion for Summary Judgment; grant Corizon's Motion to Strike; grant Siddha's Motion to Respond to Motion to Dismiss nunc pro tunc; and deny Siddha's Motions for Preliminary Injunction, to Appoint Counsel, and to Enforce Preliminary Injunction.

## I.     BACKGROUND

Plaintiff Yimoe Siddha's Complaint concerns three largely unrelated allegations: (1) Corizon's denial of medical treatment for his diabetes; (2) correctional staff falsely designating him as a gang affiliate; and (3) Correctional Defendants' refusal to accommodate his request to be placed on a kosher meal plan.

### A.     Medical Defendant

Siddha is suing Corizon, the contractual medical provider for the Maryland Division of Correction, because he "informed the medical . . . department that he is a diabetic, and his medication (Metformin) has been withheld for several weeks, causing [him] severe suffering and pain in both hands and feet." (Compl. at 8, ECF No. 1).[5] He states that he filed an administrative remedy procedure ("ARP") complaint regarding the failure to

---

[4] Siddha also seeks default judgment, claiming Defendants did not file a timely response to the Complaint. (ECF No. 17). Defendants' responses to the Complaint were timely. Siddha is not entitled to default judgment.

[5] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

provide him with medication, but his ARP was dismissed by the ARP coordinator and Warden Dovey. (Id. at 10).

In support of Corizon's Motion, it provides excerpts of Siddha's medical records and declarations from Dr. Erwin Aldana and Dr. Mahboobeh Memarsadeghi. Aldana explains that Siddha has type 2 diabetes, a chronic condition that affects the way his body processes sugar. (Corizon Mot. Dismiss Alt. Summ. J. ["Corizon Mot."] Ex. B ["Aldana Decl."] ¶¶ 5–6, ECF No. 14-9). Treatment for Siddha's diabetes includes exercise, weight maintenance, and medications such as Metformin when needed. (Id. ¶ 6). The goal of treatment is to maintain normal blood sugar levels, which means an A1C level of less than seven percent for most adults with type 2 diabetes. (Id.).

Diabetic neuropathy, a type of nerve damage that can cause symptoms of tingling, burning, and numbness, has no cure and can develop slowly in patients with type 2 diabetes. (Id. ¶ 7). Controlling blood sugar levels can slow or delay the progression of diabetic neuropathy. (Id.). Siddha is currently prescribed Elavil, a tricyclic antidepressant, to treat the pain he experiences as a result of his neuropathy. (Id.).

Siddha was prescribed a thirty-day supply of Metformin, an oral diabetes medication, on August 12, 2019. (Id. ¶ 8). When he was seen in the chronic care clinic ten days later, his hemoglobin A1C level was 6.6 percent. (Id. ¶ 9).[6] Siddha reported burning

---

[6] Health care practitioners test patients' hemoglobin A1C level to diagnose type 1 and type 2 diabetes and to monitor how well patients are managing their diabetes. Mayo Clinic Staff, A1C test, Mayo Clinic (Dec. 18, 2018) https://www.mayoclinic.org/tests-procedures/a1c-test/about/pac-20384643. A healthy A1C level is below 5.7 percent; A1C levels between 5.7 and 6.4 percent indicate prediabetes; A1C levels of 6.5 percent or higher

and tingling sensations in his feet, which improved with Elavil. (Id.). He did not report other symptoms of worsening diabetes. (Id.). At the time, Siddha's doctor recommended that he remain on his current medications, including Metformin. (Id.).

On September 6, 2019, Siddha requested a refill of Metformin. (Id. ¶ 10). Two weeks later, Siddha was seen by a nurse for assessment of his diabetes. (Id. ¶ 11). He reported tingling in his hands and feet and was provided with a fifteen-day supply of Metformin. (Id.).

On September 20, 2019, a nurse referred Siddha to a provider to refill his medications. (Id. ¶ 12). Three days later, a nurse practitioner saw Siddha for the referral. (Id. ¶ 13). Siddha reported that Elavil was effective in controlling his neuropathy. (Id.). His examination revealed no abnormalities and his medications were renewed. (Id.). Siddha received a thirty-day supply of Metformin on September 27, 2019. (Id. ¶ 14). Siddha underwent laboratory testing on October 3, 2019, which revealed a hemoglobin A1C level of 6.4 percent. (Id. ¶ 15).

On December 2, 2019, Siddha was seen by Memarsadeghi in the chronic care clinic. (Id. ¶ 17). Memarsadeghi reported that Siddha's diabetes was stable and managed with diet and medication. (Id.). Her examination of Siddha revealed normal pulses in his feet, indicating that there were no signs of peripheral vascular disease, and a sensory test to ensure he had not lost protective sensation in his feet was normal. (Id.). Memarsadeghi renewed Siddha's medications and added a prescription for an anti-fungal cream for

---

indicate diabetes; and an A1C level above eight percent indicates that the diabetes is not well-controlled. Id.

athlete's foot. (<u>Id.</u>). Examinations on December 28, 2019 and January 30, 2020 revealed no new symptoms. (<u>Id.</u> ¶¶ 18–19).

On February 8, 2020, a nurse saw Siddha for complaints of stomach pain and headache. (<u>Id.</u> ¶ 21). A doctor prescribed Siddha Tylenol, ordered him to social distance, and assigned him "feed-in" status for seven days. (<u>Id.</u>). Siddha eventually became hypotensive and borderline tachycardic and he was sent to the hospital, where he was diagnosed with the flu. (<u>Id.</u>).

On March 2, 2020, Memarsadeghi saw Siddha in chronic care and decided to repeat Siddha's comprehensive metabolic panel and hemoglobin A1C tests to determine the appropriate medication for his diabetes. (<u>Id.</u> ¶ 23; Corizon Mot. Ex. A ["Memarsadeghi Decl."] ¶ 7, ECF No. 14-3). Siddha requested lotion for his dry skin, but Memarsadeghi cautioned him that she could not provide it unless it was "a formulary medication." (Memarsadeghi Decl. ¶ 7). Siddha's exam was otherwise normal. (<u>Id.</u>).

On March 15, 2020, Siddha refused to undergo laboratory testing because he had "just gave blood twice." (Aldana Decl. ¶ 24). On March 21, 2020, Siddha refused to undergo a diabetic assessment. (<u>Id.</u> ¶ 26).

**B.    <u>Correctional Defendants</u>**

With respect to Defendants Dovey, Hall, and Simmons, Siddha alleges that he was improperly denied a kosher diet and was removed from his single cell based on an erroneous gang affiliation status. (Compl. at 11–12). He claims that denial of his request to be placed on a kosher diet violates his First Amendment right to practice the religion of his choice because he was told he would be required to change his religious preference to be

placed on the kosher diet. (Id. at 12). He further claims his right to due process was violated when he was falsely labeled as a gang member, which placed his life in danger. (Id. at 11–12).

On September 26, 2019, Siddha filed ARP 1102-19 requesting a kosher diet, stating that he had made several requests to the dietary department, but no one responded. (Correctional Defs.' Mot. Dismiss Alt. Summ. J. ["Correctional Defs.' Mot."] Ex. 1 ["ARP Recs."] at 17, ECF No. 15-2). The ARP Coordinator directed Siddha to resubmit his request and include the date he wrote to the chaplain about getting on the kosher meal plan, the response he received, and the date he changed his religious preference "to justify [him] for kosher diet." (Id.). Siddha did not resubmit the ARP; instead, he filed an "appeal" of the procedural dismissal of his complaint. (Id. at 15–16). In the appeal, which he also filed with Warden Dovey, Siddha took issue with the suggestion that the chaplain would have anything to do with his receipt of kosher meals, and claimed it violated his rights to require that he change his religious preference. (Id.). His appeal was dismissed for failure to follow the resubmission directives. (Id. at 15). Siddha filed nothing further regarding his request for kosher meals.

Correctional Defendants assert that Siddha is ineligible for placement on the kosher meal plan pursuant to the Code of Maryland Regulations ("COMAR"), which provides that a kosher diet plan is only available to members of the following faith groups: Judaism, House of Yahweh, Assemblies of Yahweh, Messianic Jewish, Hebrew Israelites, or "[o]ther recognized religions that have the same basic tenets that require the Kosher diet."

COMAR § 12.03.02.03(B)(2). Siddha's listed religious preference is Sunni Muslim. (ARP Recs. at 5; Correctional Defs.' Mot. Ex. 3 ["Hall Decl."] ¶ 5, ECF No. 15-4).

On September 26, 2019, Siddha also filed an ARP complaining that he had been removed from his assigned single cell, which he had "earned," and was told it was due to his gang affiliation. (ARP Recs. at 14). The ARP Coordinator dismissed the complaint for procedural reasons because "[t]here is no basic right to a certain classification or housing assignment under the Constitution[.]" (Id.). On October 10, 2019, Siddha filed an appeal to the Commissioner seeking to have his gang affiliation status removed and complaining that he "never received any due process" with regard to the designation, nor was he told the reason for it. (Id. at 11–12). The Commissioner dismissed the appeal, stating that Siddha had not provided "any evidence to substantiate [his] claim [he has] a constitutional right to a single cell." (Id. at 13). Notwithstanding Siddha's unsuccessful attempts to have the matter addressed through the ARP process, his gang affiliation was removed pursuant to an emailed request from Brian Simmons. (Id. at 7–10).

## C.    **Procedural Background**

Siddha filed the Complaint in this matter on January 21, 2020. (ECF No. 1). While it is not a model of clarity, the three-count Complaint appears to allege: denial of medical care in violation of the Eighth Amendment (Count I); denial of due process in designating him as a gang affiliate in violation of the Fourteenth Amendment (Count II); and denial of a religious diet in violation of the First and Fourteenth Amendments (Count III). (Compl. at 11–12). Siddha seeks compensatory and punitive damages. (Id. at 12).

7

Corizon filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment on June 30, 2020. (ECF No. 14). The Correctional Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment on July 7, 2020. (ECF No. 15). Siddha filed a Motion to Respond to Corizon's Motion to Dismiss, including his Proposed Response, on July 24, 2020. (ECF No. 20). Corizon filed a Reply in support of its Motion on August 4, 2020. (ECF No. 21). Siddha does not appear to have filed a separate response to the Correctional Defendants' Motion.

Several other motions are pending before the Court. On March 19, 2020, Siddha filed a Motion for Preliminary Injunction, (ECF No. 6), and on October 1, 2020, filed a Motion to Enforce Preliminary Injunction, (ECF No. 29). Corizon submitted a Response to Siddha's Motion to Enforce Preliminary Injunction on October 1, 2020, (ECF No. 30); no Defendant appears to have submitted a Response to Siddha's original Motion for Preliminary Injunction. Siddha filed a Motion for Appointment of Counsel on August 18, 2020. (ECF No. 24). Finally, on September 24, 2020, Corizon filed a Motion to Strike one of Siddha's filings, arguing that it constituted an unauthorized surreply. (ECF No. 27). Siddha has not filed a Response to the Motion to Strike.

## II.   NON-DISPOSITIVE MOTIONS

### A.   <u>Injunctive Relief</u>

In his Motion for Preliminary Injunction (ECF No. 6), Siddha asserts that without an injunction he will suffer irreparable harm. He states he has been denied due process by Defendants Dovey and Simmons because he has been labeled a "gangster" and he is perceived as a threat. (Mem. Supp. Mot. Prelim. Inj. ["Mot. P.I."] at 3, ECF No. 6-1). He

8

further asserts that "Corizon continue[s] to delay and deny . . . treatment for medical con[di]tions that [are] already documented." (Id.). He states that Memarsadeghi is "refusing to treat Plaintiff's ongoing skin condition" and Defendant Hall "refuses to answer any request from Plaintiff about religious diet." (Id.).

A preliminary injunction is an extraordinary remedy. See Munaf v. Geren, 553 U.S. 674, 689–90 (2008). A party seeking a preliminary injunction must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the party's favor; and (4) the injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); The Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346–47 (4th Cir. 2009). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. See Taylor v. Freeman, 34 F.3d 266, 269 (4th Cir. 1994).

As set forth in more detail below, the indisputable evidence before the Court establishes that: (1) Siddha is no longer flagged as a gang member; (2) Siddha has not alleged facts suggesting that his freedom of religion has been impacted by his inability to receive a kosher diet; and (3) Siddha has received and continues to receive adequate medical care. His claim for injunctive relief fails because he is unlikely to be successful on

the merits of his claims and has not demonstrated a likelihood of irreparable harm. The Motion shall be denied, as will his subsequent Motion to Enforce Preliminary Injunction.

## B.    Other Motions

### 1.    Motion to Respond

Siddha filed a Motion to Respond to Motion to Dismiss (ECF No. 20). Although the Motion is unnecessary given that Siddha has the right to oppose the Motions filed by Defendants, the Motion shall be granted. See Fed.R.Civ.P. 56.

### 2.    Motion to Appoint Counsel

Siddha's Motion to Appoint Counsel (ECF No. 24) asserts that he is unable to afford counsel and that his incarceration will limit his ability to litigate the claims raised. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one and may be considered where an indigent claimant presents exceptional circumstances. See Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975); see also Branch v. Cole, 686 F.2d 264, 266 (5th Cir. 1982).

Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it[.]" Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel), abrogated on other grounds, Mallard v. U.S. Dist. Ct. for the S. Dist. of Iowa, 490 U.S. 296, 298 (1989). Exceptional circumstances include a litigant who "is barely able to read [or] write," Whisenant, 739 F.2d at 162, or clearly "has a colorable claim but lacks the capacity to present it[,]" Berry v. Gutierrez, 587 F.Supp.2d 717, 723 (E.D.Va. 2008). Upon careful consideration of the Motions and previous filings by Siddha, the Court finds that

he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. No exceptional circumstances exist that warrant the appointment of an attorney to represent Siddha under § 1915(e)(1). The Motion shall be denied.

### 3.    Motion to Strike

Corizon submits a Motion to Strike. (ECF No. 27). The Motion relates to a declaration submitted by Siddha and signed by inmate Willie Stewart. (ECF No. 26). Stewart states that he was Siddha's cellmate during the months of August through October 2019 and he witnessed Siddha complain to "Prison Officials about severe pain in his hands and feet." (Stewart Decl. ¶ 2, ECF No. 26). Stewart further states that "Prison Officials repeatedly told [Siddha] that the Medical Department was aware that he [was] all out of his diabetic medicine and that his pain and suffering has been going on for weeks at a time." (Id.). Stewart claims that Siddha became ill on a daily basis. (Id. ¶ 3).

Corizon moves to strike the declaration by Stewart as an unauthorized surreply. Siddha filed the Stewart Declaration nearly two months after he filed his Opposition to Defendants' Motions for Summary Judgment, and roughly one-and-one-half months after Corizon's Reply. No party is entitled to file a surreply unless otherwise ordered by the Court. See Local Rule 105.2(a) (D.Md. 2018). A surreply is most often permitted when the moving party must respond to matters raised for the first time in a reply. See Lewis v. Rumsfeld, 154 F.Supp.2d 56, 61 (D.D.C. 2001). Siddha has not articulated an argument for why a surreply should be permitted in response to Corizon's Reply, nor are any

justifications apparent to this Court on the face of the Stewart Declaration. Accordingly, the Court will grant Corizon's Motion to Strike.

## III.   DISCUSSION

### A.   <u>Standard of Review</u>

#### 1.   **Conversion**

Defendants' Motions are styled as motions to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. Motions styled in this manner implicate the Court's discretion under Rule 12(d). <u>See</u> <u>Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty.</u>, 788 F.Supp.2d 431, 436–37 (D.Md. 2011), <u>aff'd</u>, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" <u>Wells-Bey v. Kopp</u>, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, <u>Federal Practice & Procedure</u> § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. <u>See</u> <u>Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.</u>, 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and

submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration explaining the "specified reasons" why "it cannot present facts essential to justify its opposition[.]" Fed.R.Civ.P. 56(d).

"The Fourth Circuit places 'great weight' on the affidavit requirement." Nautilus Ins. Co. v. REMAC Am., Inc., 956 F.Supp.2d 674, 683 (D.Md. 2013) (quoting Evans, 80 F.3d at 961). However, non-compliance may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary." Harrods, 302 F.3d at 244. Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party[,]" such as "complex factual questions about intent and motive." Id. at 247 (quoting

10B Wright, Miller & Kane, <u>Federal Practice & Procedure</u> § 2741, at 419 (3d ed. 1998))

(internal quotation marks omitted).

Here, the Court concludes that both requirements for conversion are satisfied.

Siddha was on notice that the Court might resolve Defendants' Motions under Rule 56

because Defendants styled their Motions as "Motion to Dismiss or, in the Alternative,

Motion for Summary Judgment" and presented extra-pleading material for the Court's

consideration. <u>See</u> <u>Moret</u>, 381 F.Supp.2d at 464. In addition, the Clerk informed Siddha

about the Motions and his right to file an opposition. (ECF No. 16). Siddha filed an

Opposition, as well as numerous documents and correspondence in support of his claims.

In none of those filings did Siddha make the Court aware of his need for additional

discovery, much less file an affidavit or declaration specifying the reasons he could not

present facts essential to justify his opposition. Thus, because the Court will consider

documents outside of Siddha's Complaint in resolving Defendants' Motions, the Court

will treat them as motions for summary judgment.

## 2.      Summary Judgment

In reviewing a motion for summary judgment, the Court views the facts in a light

most favorable to the nonmovant, drawing all justifiable inferences in that party's favor.

<u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 255 (1986) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158–59 (1970)).

Summary judgment is proper when the movant demonstrates, through "particular parts

of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations . . . admissions, interrogatory answers,

or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence." Fed.R.Civ.P. 56(c)(4).

Following a properly supported motion for summary judgment, the burden shifts to the nonmovant to identify evidence showing there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there

15

can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

## B.   Analysis

### 1.   Medical Care

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976); see also Hope v. Pelzer, 536 U.S. 730, 737 (2002); Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016); King v. Rubenstein, 825 F.3d 206, 219 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Anderson v. Kingsley, 877 F.3d 539, 543 (4th Cir. 2017).

To prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Anderson, 877 F.3d at 543. A prisoner plaintiff must allege and provide some evidence he was suffering from a serious medical need and that defendants were aware of his need for medical attention but failed to either provide it or ensure it was available. See Farmer v. Brennan, 511 U.S. 825, 834–37 (1994); see also Heyer v. U.S. Bureau of Prisons, 849 F.3d 202, 209–10 (4th Cir. 2017); King, 825 F.3d at 218; Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

16

Objectively, the medical condition at issue must be serious. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). A serious medical condition is an illness or condition that is either life-threatening or causes an unnecessary infliction of pain when it is not treated properly. See, e.g., Barnes v. Bilak, No. JKB-17-1057, 2018 WL 2289232, at *6 (D.Md. May 17, 2018) (finding that high blood pressure is a serious medical need); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (finding that pituitary tumor is a serious medical need); Brown v. Harris, 240 F.3d 383, 389 (4th Cir. 2001) (finding that risk of suicide is a serious medical need).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. See Farmer, 511 U.S. at 839–40; see also Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference because 'prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through other evidence that tends to establish the defendants knew about the problem. This includes evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." Scinto, 841 F.3d at 226 (quoting Farmer, 511 U.S. at 842).

Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. See Lightsey, 775 F.3d at 179 (physician's act of prescribing treatment raises a fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Additionally, the right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011) (quoting Bowring v. Godwin, 551 F.2d 44, 47–48 (4th Cir. 1977)).

Defendant Corizon is a private corporation, not a person. A private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. See Austin v. Paramount Parks, Inc., 195 F.3d 715, 727–28 (4th Cir. 1999); Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982); Clark v. Md. Dep't of Pub. Safety and Corr. Servs., 316 F.App'x 279, 282 (4th Cir. 2009). "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); see also Simons v. Montgomery Cty. Police Officers, 762 F.2d 30, 34 (4th Cir. 1985). Thus, Siddha's claim against Corizon must fail.

Even if Siddha had named an individual medical care provider as a defendant in this action, his Eighth Amendment claim for denial of medical care would nonetheless fail. There is no objective evidence that Siddha was denied appropriate care for his diabetes; rather, he was provided with medication and regular check-ups for his condition. To the extent he suffers from diabetic neuropathy, there is no evidence that he developed the condition as a result of anything other than the unfortunate but common course of his medical condition. Accordingly, Siddha's claims for denial of medical care shall be dismissed.

### 2.     Religious Diet

"[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). Prison inmates do, however, retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. See Cruz v. Beto, 405 U.S. 319, 322 (1972) (per curiam). But that right is not unfettered. Prison restrictions that impact the free exercise of religion but are related to legitimate penological objectives do not run afoul of the Constitution. See Turner v. Safley, 482 U.S. 78, 89–91 (1987). Determining if specific restrictions are justified requires an examination of whether there is a rational relation between the asserted governmental interest and the restrictions in question. Id. at 89. In addition, courts must examine whether there are alternative means of exercising the right asserted; whether accommodation of the right will affect the orderly operations of the

prison; and whether readily available alternatives to the regulation would be less restrictive. Id. at 90.

Siddha's claim regarding his request for placement on the kosher meal plan is vague and contains no assertion that consuming a kosher diet is required by his sincerely held religious beliefs. As Defendants correctly noted, Siddha's listed religious preference is Sunni Muslim, and the Code of Maryland Regulations provides that a kosher diet plan is only available to members of the following faith groups: Judaism, House of Yahweh, Assemblies of Yahweh, Messianic Jewish, Hebrew Israelites, or "[o]ther recognized religions that have the same basic tenets that require the Kosher diet." COMAR § 12.03.02.03(B)(2). Limiting distribution of special meals to individuals whose sincerely held religious beliefs require a particular diet does not run afoul of the Constitution. As such, Siddha's denial of religious diet claim will be dismissed.

### 3.    Gang Affiliation Status

Siddha alleges that Correctional Defendants violated his rights under the Fourteenth Amendment's Due Process Clause by falsely labeling him a gang affiliate. Correctional Defendants have provided evidence, however, that Siddha is no longer designated as gang affiliated. Article III of the Constitution limits the judicial power to "actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990) (citations omitted). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (citation and internal quotation marks omitted). For a declaratory judgment to issue,

there must be a dispute which "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." Aetna Life Ins. Co. of Hartford v. Haworth, 300 U.S. 227, 242 (1937); see also Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941). The relief Siddha sought in his Complaint has already been provided. Accordingly, the claim is moot.

To the extent Siddha seeks damages for harm he allegedly incurred as a result of his gang designation—specifically, that Correctional Defendants violated his due process rights when they determined he was affiliated with a gang and moved him to a different cell—such a claim is without merit. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." Meachum v. Fano, 427 U.S. 215, 224 (1976). It is well established that absent a showing of "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," prisoners do not have a constitutional right to due process before being denied access to programs or particular housing. Sandin v. Conner, 515 U.S. 472, 484 (1995). Courts have found that assignment to administrative segregation does not create an atypical and significant hardship. See Hewitt v. Helms, 459 U.S. 460, 467 (1983) (holding that administrative segregation is part of the ordinary incidents of prison life); Sandin, 515 U.S. at 485 (no liberty interest protecting against a thirty-day assignment to segregated confinement because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence"). Likewise, Siddha's removal from a single cell and temporary assignment to administrative

segregation on the mistaken belief that he was a member of a gang is not the sort of deprivation of liberty interest that triggers the protections of the Due Process Clause. See, e.g., Keeling v. Barrager, 666 F.App'x 153, 156 (3d Cir. 2016) ("[I]t is well settled that he had no protected liberty interest that was implicated by . . . the removal of his single-cell assignment[.]"); Hernandez v. Velasquez, 522 F.3d 556, 563 (5th Cir. 2008) (finding that "confinement to a shared cell for twelve months with permission to leave only for showers, medical appointments, and family visits" did not constitute an "atypical and significant hardship" sufficient to implicate the Due Process Clause).

To the extent that Siddha asserts his gang affiliate designation caused Correctional Defendants to deny him the kosher diet he requested, such a claim cannot succeed because, as set forth above, Siddha has not submitted evidence demonstrating that he is entitled to a special meal on the basis of his religion. Finally, to the extent that Siddha alleges his gang designation placed him in danger, he has not supported that vague allegation with sufficient facts to survive summary judgment. Accordingly, the Court will deny Siddha's claim that he was deprived of his Fourteenth Amendment right to due process.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motions to Dismiss or, in the Alternative, for Summary Judgment (ECF Nos. 14, 15); grant Corizon's Motion to Strike (ECF No. 27); grant Siddha's Motion to Respond to Motion to Dismiss (ECF No. 20) nunc pro tunc; and deny Siddha's Motions for Preliminary Injunction (ECF No. 6), to Appoint Counsel (ECF No. 24), and to Enforce Preliminary Injunction (ECF No. 29). A separate Order follows.

Entered this 22nd day of October, 2020.


_____/s/_____
George L. Russell, III
United States District Judge